[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13097
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-00102-TCB-JFK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DOMINIC SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 29, 2013)

Before MARTIN and BLACK, Circuit Judges, and EDENFIELD, District Judge.[*]

PER CURIAM:

Dominic Smith appeals his convictions and sentence of thirty-three months imprisonment.  After a jury trial, Dominic was convicted of two counts of conspiracy to make false statements and representations in the purchase of firearms, in violation of 18 U.S.C. § 371 (Counts 1 and 3), and two counts of aiding and abetting the making of false statements and representations in the purchase of firearms, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2 (Counts 2 and 4).[1]

The government's theory of the case was that Dominic conspired with Jarrett Turnipseed and Dominic's sister, La'Fredria (Counts 1 and 3, respectively), to obtain twenty-four guns through straw purchases at pawnshops in Georgia and distribute them in Massachusetts, where Dominic lived.  Count 2 alleged that Dominic aided and abetted Turnipseed in fraudulently purchasing three guns for Dominic from a federally licensed firearms dealer, Ed's Pawn Shop, in January of 2008.  Counts 4 through 7 alleged that Dominic aided and abetted La'Fredria in fraudulently purchasing for Dominic seven guns in January of 2008; nine guns in February of 2008; one gun in July 2008; and four guns in November of 2008, all

---

[*] Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia, sitting by designation.

[1] For clarity, we have referred to Dominic and La'Fredria Smith by their first names.

from a federally licensed firearm dealer, Guns & Gold Pawn.  Before Dominic's case went to the jury, the district court denied his Rule 29 motion for judgment of acquittal.  The jury convicted Dominic of Counts 1 through 4, acquitted him on Counts 5 and 6, and could not reach a verdict on Count 7.

In this, his direct appeal, Dominic argues: 1) that the evidence was insufficient to sustain his convictions; 2) that the district court erred in denying, in part, his pretrial motion in limine; and 3) that his sentence is procedurally and substantively unreasonable.

## I.   SUFFICIENCY OF THE EVIDENCE

Dominic argues that the evidence was insufficient to support his convictions and that the district court should have granted his Rule 29 motion.  With respect to the Counts involving guns purchased by Turnipseed, Dominic argues that there was no evidence of Dominic's involvement in a conspiracy and that there was no evidence that Ed's Pawn Shop was a federally licensed firearms dealer.  As for the Counts involving guns purchased by La'Fredria, Dominic again argues that there was insufficient evidence to show that Guns & Gold Pawn was a federally licensed firearms dealer and also that there is no evidence that he was involved with La'Fredria's purchases.

A.

3

In <u>United States v. Friske</u>, this Court set out the standards for attacking the sufficiency of evidence to sustain a conviction:

> In reviewing a sufficiency of the evidence challenge, we consider the evidence in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor.  A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt.

640 F.3d 1288, 1290–91 (11th Cir. 2011) (quotation marks and citation omitted).

To prove a conspiracy, as charged in Counts 1 and 3, the government must show "(1) that an agreement existed between two or more persons to commit a crime; (2) that the defendant knowingly and voluntarily joined or participated in the conspiracy; and (3) [that] a conspirator performed an overt act in furtherance of the agreement."  <u>United States v. Ndiaye</u>, 434 F.3d 1270, 1294 (11th Cir. 2006). "The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence . . . ."  <u>United States v. Molina</u>, 443 F.3d 824, 828 (11th Cir. 2006) (quotation marks omitted).  "[T]he uncorroborated testimony of an accomplice is sufficient to support a conviction if it is not on its face incredible or otherwise insubstantial."  <u>United States v. Milkintas</u>, 470 F.3d 1339, 1344 (11th Cir. 2006).

To prove aiding and abetting, as charged in Counts 2 and 4, the government must demonstrate: 1) that a substantive offense was committed; 2) that Dominic

4

associated himself with the criminal venture; and 3) that he committed some act which furthered the crime.  See United States v. Hamblin, 911 F.2d 551, 557 (11th Cir. 1990); United States v. Pareja, 876 F.2d 1567, 1570 (11th Cir. 1989).  The government must show that Dominic shared the same unlawful intent as the perpetrator, but need not prove that Dominic was at the scene of the crime.  See Hamblin, 911 F.2d at 557–58.

In order to prove the substantive offence underlying the aiding and abetting Counts, the government must establish: (1) that the pawnshops were federally licensed firearms dealers at the time of each purchase; (2) that Dominic and his co-defendants aided and abetted each other in making a false statement or representation in the firearm records maintained by the pawnshops; and (3) that Dominic and his co-defendants aided and abetted each other in making the false statement or representation while knowing it to be false.  See 18 U.S.C. §§ 924(a)(1)(A) and 2 (2006); United States v. Nelson, 221 F.3d 1206, 1210 n.6 (11th Cir. 2000), cert. denied, 531 U.S. 951, 121 S. Ct. 356 (2000).

## B.

There was ample evidence to support Dominic's convictions and the district court did not err in overruling Dominic's Rule 29 motion.

According to testimony introduced at trial, Dominic asked Turnipseed to buy guns.  On January 4, 2008, Turnipseed, Dominic, and a woman Turnipseed

5

believed to be Dominic's sister, met at Ed's Pawn Shop in Stockbridge, Georgia.[2]

Dominic and the woman selected the firearms that they wanted Turnipseed to

purchase. Outside of the store, the woman took $700 out of an ATM, which

Dominic then gave to Turnipseed. When Turnipseed purchased three firearms for

just under $600, he filled out a required Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF) form 4473 that included a question asking him if he was the

actual buyer and he said he was. Turnipseed gave the guns to Dominic and kept

$100 as payment. This evidence was sufficient to sustain Dominic's convictions

on Counts 1 and 2 because a "reasonable construction of the evidence would have

allowed the jury to find [him] guilty beyond a reasonable doubt" of conspiring with

and aiding and abetting Turnipseed in making false statements in the purchase of a

firearm. See Friske, 640 F.3d at 1291 (quotation marks omitted).

Testimony at trial also established that La'Fredria and Dominic entered

Guns & Gold Pawn in Riverdale, Georgia, together on January 10, 2008.[3]

La'Fredria asked to purchase the "whole top row" of handguns. After talking to

Dominic, La'Fredria decided to purchase a shotgun as well. La'Fredria purchased

six handguns and a shotgun and certified that she was the actual buyer. La'Fredria

---

[2] The general manager of Ed's Pawn Shop and a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agent testified that the shop had never let its federal license lapse.

[3] Doreen Banks, a manager at Guns & Gold Pawn, testified that the shop had a federal firearms license in 2008, that she was in charge of updating it, that it had never lapsed, and that the license the government admitted into evidence was valid for the period in question. An ATF agent also testified that the license had never lapsed.

purchased the shotgun using Dominic's credit card but said she was just borrowing the money. On February 14, 2008, Dominic returned and pawned the shotgun that La'Fredria had purchased.

There was other evidence that La'Fredria and Dominic continued their scheme to obtain firearms under La'Fredria's name. La'Fredria returned to the pawnshop three more times to purchase a total of fourteen more firearms, accompanied by Dominic on her last trip. Starting in March of 2008, around the time Dominic asked a former girlfriend to rent a car for him to travel from Georgia to Massachusetts for a job, guns purchased by La'Fredria in February of 2008 began showing up at Boston crime scenes close to Dominic's Boston address. This evidence was sufficient to sustain Dominic's convictions on Counts 3 and 4 because a "reasonable construction of the evidence would have allowed the jury to find [him] guilty," of conspiring with and aiding and abetting La'Fredria in making false statements to purchase firearms. See Friske, 640 F.3d at 1291 (quotation marks omitted).

## II. PRE-TRIAL MOTION IN LIMINE

Dominic argues that the district court erred in denying, in part, his pre-trial motion in limine to limit testimony concerning the crime scenes where law enforcement officers recovered firearms purchased in Georgia in Massachusetts. Dominic argues that his rights were violated when the district court allowed highly

7

prejudicial evidence that the firearms purchased in Georgia were recovered in a "high drug trafficking and high crime area" in Boston.

Because Dominic never objected at trial to the introduction of contextual evidence, we review for plain error. See United States v. Brown, 665 F.3d 1239, 1247 (11th Cir. 2011) (holding that where a party does not preserve an objection, review is for plain error and that "the overruling of a motion in limine does not suffice for preservation of an objection" (quotation marks omitted)). Dominic must show "(1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (quotation marks omitted).

We find the district court did not commit plain error in admitting minimal contextual evidence concerning the recovery of the guns, which is all the district court allowed. Highly prejudicial evidence was, in fact, excluded, and no evidence demonstrated that the guns were found in a "high drug trafficking and high crime area." Instead, the contextual evidence introduced to describe the gun recoveries was, for the most part, mundane. For instance, one officer testified that a gun was found in "[a]n incident [that] involved two suspects on scooters." We agree with the government that this minimal evidence about each gun recovery was relevant to "complete[] the story of the crime, and help[] show the Defendant's purpose and motive for using straw buyers to obtain weapons." In light of all of the evidence in

8

this case, Dominic cannot show that his substantial rights were affected by this evidence.

## III.  ENHANCEMENTS UNDER THE SENTENCING GUIDELINES

### A.

Dominic next argues that the district court erred in applying a four-level enhancement under United States Sentencing Guidelines § 2K2.1(b)(1)(B) for crimes involving eight to twenty-four firearms.[4]  He says the court erred by relying on conduct that was not proven by a preponderance of the evidence.  Dominic argues that he was acquitted as to fourteen of the twenty-one firearms involved in Count 3.  Dominic also argues that three of the twenty-one firearms involved in Count 3 were returned to the pawnshop.  Therefore, Dominic argues that he should be held responsible for three firearms involved in Counts 1 and 2 and four firearms involved in Counts 3 and 4 for a total of seven firearms.

We accept the district court's factual findings at sentencing unless clearly erroneous and review the application of the Sentencing Guidelines to the facts de novo.  United States v. Caraballo, 595 F.3d 1214, 1230 (11th Cir. 2010).  A court may consider relevant acquitted conduct at sentencing so long as that conduct has

---

[4] Under § 2K2.1(b)(1), a four-level increase applies if an offense involved eight to twenty-four firearms, and a two-level increase applies if an offense involved three to seven firearms.  United States Sentencing Guidelines § 2K2.1(b)(1)(A), (B) (Nov. 2010).  "[O]nly those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed" are to be counted under § 2K2.1(b)(1).  Id. § 2K2.1, comment. (n.5).  Under § 1B1.3(a), offense characteristics are determined on the basis of all acts and omissions committed or aided and abetted by the defendant.  Id. § 1B1.3(a)(1)(A).

9

been proven by a preponderance of the evidence.  United States v. Tobin, 676 F.3d 1264, 1309 (11th Cir. 2012), cert. denied, ___ U.S. ___, 133 S. Ct. 658 (2012).

"It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party."  United States v. Ross, 131 F.3d 970, 988 (11th Cir. 1997) (quotation marks omitted).  At sentencing, Dominic objected to the Presentence Investigation Report (PSI) because he argued that he should be held responsible for nine firearms, not twenty-four, which would have still led to a four-level enhancement.  Dominic may not now complain that the district court adopted the number he advocated.

Nevertheless, Dominic argues that the district court abused its discretion by attributing too much weight to the number of firearms purchased through conduct for which he was acquitted.  See United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (providing that giving significant weight to an improper or irrelevant factor amounts to an abuse of discretion).  At sentencing, the district court indicated that all twenty-four of the firearms underlying the charges in the indictment were attributable to Dominic.  While we think there is some question as to whether the government proved by a preponderance of the evidence that the July purchase of a single gun by La'Fredria was part of Dominic's relevant conduct, we find that the conduct underlying Counts 5 and 7 was proven by a preponderance of

the evidence. Because either a total of twenty-three or twenty-four firearms warrants a four-level enhancement, we find no abuse of discretion here.

And in any event, Dominic's argument fails because, at a minimum, even accepting his argument about acquitted conduct, the jury convicted Dominic of Counts 2 and 4, which involved ten firearms. Dominic cites no support for his contention that because he later pawned firearms from the Count 4 transaction that the firearms cannot be counted at sentencing for the underlying crime. For these reasons, the four-level enhancement was not error.

B.

Dominic also argues that the district court erred in applying a two-level enhancement under U.S.S.G. § 3B1.1(c) based on his role in the offense. Dominic says that he did not play a greater role than anyone else.[5]

We review the application of the § 3B1.1(c) leadership role enhancement for clear error. United States v. Barrington, 648 F.3d 1178, 1200 (11th Cir. 2011), cert. denied, ___ U.S. ___, 132 S. Ct. 1066 (2012). "[T]here is no clear error in cases in which the record supports the district court's findings." United States v. Petrie, 302 F.3d 1280, 1290 (11th Cir. 2002). The district court may consider any evidence heard during trial, admitted to by a guilty plea, undisputed in the

---

[5] Dominic also argues that his due process rights were violated because the district court relied on information in La'Fredria's sealed plea agreement, which he was not allowed to view, in sentencing him. However, at sentencing, the government informed the district court that it should not use the information in La'Fredria's plea agreement to support the enhancement, and the record does not suggest reliance on this information.

11

presentence investigation report, or presented at the sentencing hearing. United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989). A court can properly apply a role enhancement under § 3B1.1(c) where the evidence shows that the defendant exerted influence or control over just one participant. See United States v. Lozano, 490 F.3d 1317, 1323 (11th Cir. 2007) (affirming an enhancement where the defendant instructed at least one co-conspirator to engage in criminal conduct).

The evidence shows that Dominic initiated contact with Turnipseed about the purchase of the firearms underlying the charges in Counts 1 and 2; that Dominic directed Turnipseed as to which firearms to purchase; and that Dominic allowed Turnipseed to keep $100 in return for purchasing the firearms. Based on this, the district court could reasonably conclude that Dominic asked Turnipseed to falsely represent to the pawnshop that Turnipseed was the buyer. We conclude, therefore, that the application of the enhancement was not clear error. See id.

## IV. REASONABLENESS OF THE SENTENCE

Dominic argues that the district court abused its discretion by failing to give appropriate weight to his history and characteristics, including the circumstances surrounding his upbringing and his mental-health history.

We review the reasonableness of a sentence under a deferential abuse of discretion standard of review. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). "A district court's sentence need not be the most appropriate one,

[but rather] need only be a reasonable one." Irey, 612 F.3d at 1191.

Relevant sentencing factors under 18 U.S.C. § 3553(a) include, but are not limited to, the nature and circumstances of the offense and the background history and characteristics of the defendant; the need to reflect the seriousness of the offense; the need for deterrence; the need to protect the public; and the instructions and commentary of the Sentencing Guidelines. See 18 U.S.C. § 3553(a); United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). "[W]e do not substitute our [own] judgment for that of the district court in weighing the [relevant] sentencing factors absent a clear error of judgment." See United States v. Early, 686 F.3d 1219, 1223 (11th Cir. 2012).

The district court, after having "carefully considered all of the sentencing factors set forth in § 3553(a)," imposed a thirty-three month sentence at the high end of the guideline range due to the nature and severity of the crime but also explained that "but for the arguments and facts [Dominic's counsel] pointed out today . . . the sentence would be substantially higher." Although Dominic's sentence was imposed at the high end of his guideline range, his sentence was still within the guideline range, and we ordinarily expect a sentence within the guideline range to be reasonable. Talley, 431 F.3d at 788. We conclude that Dominic has failed to show that the district court imposed a substantively unreasonable sentence.

For the foregoing reasons, we affirm Dominic's sentences.

**AFFIRMED.**